SIGNED: April 20th, 2022
THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Paul M. Black
**UNITED STATES BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| **IN RE**: | ) | **CHAPTER 11** |
| | ) | |
| **TARA RETAIL GROUP, LLC** | ) | **Case No. 1:17-bk-00057** |
|    Debtor. | ) | |
| | ) | |
| **COMM 2013 CCRE12 CROSSINGS MALL ROAD, LLC** | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TARA RETAIL GROUP, LLC** | ) | |
|    Defendant, Cross Plaintiff | ) | **Adversary Proceeding** |
|    and Third-Party Plaintiff, | ) | **No. 1:21-ap-00001** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMM 2013 CCRE12 CROSSINGS MALL ROAD, LLC** | ) | |
|    Cross Defendant and | ) | |
| | ) | |
| **WELLS FARGO COMMERCIAL MORTGAGE SERVICING** | ) | |
|    Third-Party Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the Court is the Motion for Stay Pending Appeal (the "Motion for Stay") filed by

COMM 2013 CCRE12 Crossings Mall Road, LLC ("Comm 2013") and Wells Fargo

Commercial Mortgage Servicing ("Wells Fargo") (collectively, the "Appellants") against Tara

Retail Group, LLC (the "Debtor").[1]  AP ECF 100.[2]  The Debtor objects to the Motion for Stay.

AP ECF 107.[3]  The Court dispenses with oral arguments because the facts and legal positions are

adequately presented in the materials before the Court and further argument would not aid the

Court's decision process.  For the reasons stated below, the Court will deny the Appellants'

Motion for Stay in whole.

## Factual Background

This matter is the latest dispute between the Appellants and the Debtor, primarily

revolving around the Court's confirmation order and opinion entered by the Honorable Patrick

M. Flatley on January 27, 2020 (collectively, the "Confirmation Order").  ECF 1313, 1315.[4]  As

discussed in greater detail in the Court's memorandum opinion and order on the parties' cross-

motions for summary judgment (collectively, the "Summary Judgment Order" AP ECF 54, 55),

the Debtor filed a motion to alter or amend judgment on February 5, 2020 and the Appellants

filed a motion for clarification of the terms of the confirmation order on February 10, 2020

before Judge Flatley retired on March 11, 2020.  ECF 1326, 1345.  After attempts to mediate the

parties' disputes failed and the case's designation to the undersigned on September 14, 2020

(after its previous assignment to the Honorable Frank W. Volk who considered the case as a

United States District Judge), the Court entered the "Clarification Order" on September 24, 2020.

ECF 1411.  The Clarification Order, intended to clear up any remaining issues of interpretation

of the Confirmation Order, instead caused more conflict.

---

[1] United States Bankruptcy Judge Paul M. Black, Western District of Virginia, sitting by designation.
[2] Citations to "AP ECF" refer to the Adversary Proceeding No. 1:21-ap-00001 (Bankr. N.D. W. Va.).
[3] The Appellants' Motion for Stay, Debtor's Response, and Appellants' Reply, filed at AP ECF 100, 107, and 114, were also filed in the primary bankruptcy case at ECF 1481, 1488, and 1491, respectively.  For ease of reference, each will be cited only to the Adversary Proceeding filing.
[4] Citations to "ECF" refer to the primary bankruptcy case No. 1:17-bk-00057 (Bankr. N.D. W. Va.).

Comm 2013 filed the instant adversary proceeding on February 4, 2021 seeking declaratory relief as to the Clarification Order and a document recorded by the Debtor in Kanawha County, West Virginia on February 6, 2020 releasing Comm 2013's $13,650,000.00 Deed of Trust securing the Appellants (the "Lien Release").  AP ECF 1.  Both parties filed motions for summary judgment in the adversary proceeding, and those motions were argued before the Court on August 19, 2021.  Comm 2013 contended that under the Clarification Order, the parties' original loan agreement (the "Original Loan Agreement" ECF 1460-4) still controlled the contractual obligations between the parties except for specific changes to the interest rate, maturity date, and payment amount.  In response, the Debtor sought to enforce the terms of the loan agreement (the "New Loan Agreement" ECF 834-1, Exhibit 2) attached to the plan confirmed by Judge Flatley (the "Confirmed Plan" ECF 834).  After another failed attempt at mediation, the Court issued the Summary Judgment Order on January 6, 2022 granting in part and denying in part the Debtor's motion and continuing in part and denying in part the Appellants' motion.  AP ECF 54.  Specifically, the Summary Judgment Order clarified for the parties that under the Confirmation Order, the New Loan Agreement controlled the parties' relationship.  AP ECF 54.

After the Court issued the Summary Judgment Order, the Appellants filed a Notice of Appeal of the Summary Judgment Order, along with a Motion for Leave to Appeal, on January 20, 2022.  The Honorable John Preston Bailey, presiding judge over the consolidated appeals, issued an order granting the motion for leave to appeal and the district court assigned the appeal Case No. 1:22-cv-00009.  AP ECF 91.[5]

---

[5] Issues pertaining to the deed of trust release continue in this Court.

Some history in this Court and on appeal is helpful in understanding the procedural complexities of this matter.  Comm 2013 previously filed a Notice of Appeal with this Court on February 10, 2020 regarding the Confirmation Order.  ECF 1333.  The district court assigned the appeal Case No. 1:20-cv-00024.  Three days later, the Bankruptcy Court rescinded the transmittal of the appeal as premature because it had not yet ruled on the Motion to Clarify.  ECF 1363.  On February 21, 2020, the district court granted Comm 2013's motion to consolidate certain appeals and stay scheduling of the Confirmation Order appeal pending this Court's decision on the Motion to Clarify.  Appeal ECF 8.  Approximately one year later, on February 5, 2021, the district court issued an Order to Show Cause questioning whether Comm 2013's appeal of the Confirmation Order was then untimely.  Appeal ECF 20.  The district court noted that it was "aware of COMM 2013's efforts to seek additional clarification from the Bankruptcy Court on its interpretation of the Memorandum Opinion and Order, but it appear[ed] that COMM 2013 ha[d] not requested formal relief from the Bankruptcy Court that would toll any appeal deadlines."  Appeal ECF 20.  Comm 2013 filed its Response to the Order to Show Cause, the Debtor filed a Response and Motion to Dismiss, and Comm 2013 filed a final Reply.  Appeal ECF 23–25.  The district court took the matter under advisement on March 4, 2021.  The district court has not yet decided this matter but has set briefing schedules for the consolidated appeals with the final brief due July 15, 2022.[6]

In the primary bankruptcy case and in the Adversary Proceeding, the Appellants filed their Motion for Stay in this Court on March 3, 2022.  AP ECF 100.  The Debtor filed its

---

[6] The district court entered an order consolidating appeals assigned Case Nos. 1:20-cv-00024, 1:20-cv-00025, and 1:20-cv-00026 on February 21, 2020 and designating Case No. 1:20-cv-00024 as the lead case.  The district court entered a second order consolidating Case Nos. 1:22-cv-00009 and 1:20-cv-00024 on April 7, 2022 and designating Case No. 1:20-cv-00024 as the lead case.  Citations to "Appeal ECF" refer to consolidated appeal Case No. 1:20-cv-00024 (N.D. W. Va.).

Response on March 28, 2022 and the Appellants filed their Reply on April 4, 2022.  AP ECF 107, 114.  The matter is now fully briefed and ripe for disposition.

**Jurisdiction**

This Court has jurisdiction over this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by the Amended Standing Order of Reference entered by the United States District Court for the Northern District of West Virginia on April 2, 2013.  This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (L), and (O).

**Discussion**

Before the Court is the Motion for Stay on two orders pending appeal: the Summary Judgment Order and the Confirmation Order.  The Appellants ask for stays pending appeals of the aforementioned Orders by arguing first that the Court exceeded its authority in altering Comm 2013's substantive rights under Federal Rule of Civil Procedure 60(a) and second that even if the Court properly invoked Rule 60(a), the Confirmation Order improperly modified the Original Loan Agreement.

The Court must necessarily discuss these arguments in reverse order.  If the Court finds the Confirmation Order should be stayed pending appeal to the district court, the Clarification Order and Summary Judgment Order interpreting and clarifying the Confirmation Order will, by extension, also be stayed.  On the other hand, should the Court deny the Motion for Stay as to the Confirmation Order, whether the Summary Judgment Order should be stayed becomes pertinent.

The Court, therefore, will take each argument in turn.

I.     Applicable Legal Standard for a Motion for Stay Pending Appeal

Federal Rule of Bankruptcy Procedure 8007 governs a litigant's motion for stay pending appeal and requires that a party seeking a stay "move first in the bankruptcy court."  FED. R. BANKR. P. 8007(a)(1)(A).  The moving party bears the burden to prove facts and circumstances demonstrating that the court should enter a stay.  *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). As granting a stay pending appeal is considered "extraordinary relief," the movant bears a "heavy burden."  *In re Wellington*, 631 B.R. 833, 838 (Bankr. M.D.N.C. 2021) (citing *Covington v. North Carolina*, No. 1:15CV399, 2018 WL 604732, 2018 U.S. Dist. LEXIS 12945 (M.D.N.C. Jan. 26, 2018)).  "A stay is not a matter of right, even if irreparable injury might otherwise result."  *Nken*, 556 U.S. at 433 (citing *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).  A stay is instead "an exercise of judicial discretion" dependent on the facts and circumstances of each case.  *Id.* (citing *Virginian Ry. Co.*, 272 U.S. at 672–73).

Courts have often struggled with the distinction between a preliminary injunction and a stay pending appeal.  This struggle is amplified by the fact that the factors considered in each analysis are nearly identical.  *Compare Nken*, 556 U.S. at 434 *with Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (explaining the four-part standard for movants seeking a preliminary injunction).  If only by implication, however, the Supreme Court has demonstrated that these analyses must differ.  *See Nken*, 556 U.S. at 434 (laying out the four factors considered in a motion for stay and stating "[t]here is substantial overlap between these and the factors governing preliminary injunctions . . . *not because the two are one and the same*, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined") (emphasis added) (internal citation omitted).  *Nken* is the controlling authority for a stay pending appeal and this Court finds the *In*

6

*re Wellington* decision's analysis particularly instructive on the application of *Nken* in this circuit. *See In re Wellington*, 631 B.R. at 839.

The factors to be considered on a motion for stay are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). While the first two of these factors are the most important to the Court's analysis, *id.*, the court balances all four factors "such that a stronger showing on some of these prongs can make up for a weaker showing on others." *In re Wellington*, 631 B.R. at 839 (citing *Ohio Valley Env't Coal., Inc. v. United States Army Corps of Eng'rs*, 890 F. Supp. 2d 688, 692 (S.D. W. Va. 2012)).

As the Appellants have moved for a stay pending appeal on two separate orders, this Court will separately discuss the four factors for each requested stay.

II.     The Appellants Have Failed to Demonstrate the Confirmation Order Should be Stayed Pending Appeal.

    **A.     The Appellants Fail to Meet Their High Burden to Make a Strong Showing of Likely Success on Appeal.**

To succeed on a motion for stay pending appeal, the first prong requires that the movants make a "strong showing" they are likely to succeed on appeal. *Nken*, 556 U.S. at 434. "Significantly, a party does not meet its burden on this factor by simply restating previous arguments from earlier filings." *In re Wellington*, 631 B.R. at 839 (citing *Palomo v. Howard*, No. 1:19CV884, 2019 WL 9633647, 2019 U.S. Dist. LEXIS 232712 (M.D.N.C. Dec. 17, 2019)). "A party must instead show 'something more' than what it has argued previously, i.e., 'that the issue to be appealed is an issue of first impression in the circuit, or that district courts have

disagreed on the issue.'" *Id.* (citing *New York Life Ins. Co. v. Singh*, No. 14-CV-5726, 2017 WL 10187669, 2017 U.S. Dist. LEXIS 230194 (E.D.N.Y. July 13, 2017)).

### 1. The Appellants Have Failed to Prove They are Likely to Succeed on Appealing the Confirmation Order.

An appellate court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *Zurich Am. Ins. Co. v. Tessler (In re J.A. Jones, Inc.)*, 492 F.3d 242, 249 (4th Cir. 2007). A bankruptcy court's mixed findings of fact and law are also reviewed *de novo*. *Id.*

In their Motion for Stay, the Appellants argue that Section 1123(a)(5) restricts a court from modifying pre-petition loan terms beyond what is required to implement the reorganization plan. AP ECF 100. They cite *In re Irving Tanning Co.*, 496 B.R. 644, 664 (B.A.P. 1st Cir. 2013), to illustrate the point. Additionally, although they do not cite Section 1129(b)(1), the Court understands the statute to be the basis for the Appellants' objection that the New Loan Agreement violates the "fair and equitable" standard by shifting a disproportionate amount of risk to Comm 2013. *See* AP ECF 100. These are separate arguments, and the Court will deal with each in turn.

### i. The Court's Confirmation Order Did Not Exceed Section 1123(a)(5)'s Preemption Authority Over Nonbankruptcy Law.

Section 1123(a)(5) states that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall: . . . provide adequate means for the plan's implementation, such as: retention by the debtor of all or any part of the property of the estate; . . . or issuance of securities of the debtor . . . ." 11 U.S.C. § 1123(a)(5)(A)–(J) (listing potential adequate means to implement a reorganization plan). Courts have read the language of this section to act as a congressional grant of preemption over nonbankruptcy law. *See Montgomery County v. Barwood, Inc.*, 422

B.R. 40, 44 (D. Md. 2009).  In *In re Irving*, the panel considered the proper scope of preemption when a proposed reorganization plan violated state law.  496 B.R. at 660.  Listing cases, the panel agreed that Section 1123(a) preempted nonbankruptcy law.  *Id.* at 662.  The panel reasoned, however, that the scope of this preemption could not be unlimited.  *Id.* at 663. Accordingly, the panel instituted three limits on Section 1123(a) preemption.  First, nonbankruptcy law is preempted only as to those specified means that are "'adequate . . . for the plan's implementation.' . . . Therefore, only those means may preempt state law that are sufficient for the implementation of the plan: they must be sufficient to implement the plan, equal to what is required, but also not more than is required."  *Id.* at 664.  Second, nonbankruptcy laws that are "concerned with protecting public health, safety, and welfare" are not preempted by Section 1123(a).  *Id.*  Finally, "the preemptive effect of [Section 1123(a)] cannot extend to laws defining and protecting the property rights of third parties."  *Id.*

Courts in the Fourth Circuit have taken a different approach to Section 1123(a).  Here, Section 1123(a)(5) "is an 'empowering statute' that 'does not simply provide a means to exercise the debtor's pre-bankruptcy rights; it enlarges the scope of those rights . . . .'"  *In re Renegade Holdings, Inc.*, 429 B.R. 502, 517 (Bankr. M.D.N.C. 2010) (citing *In re FCX, Inc.*, 853 F.2d 1149, 1155 (4th Cir. 1988)).  Furthermore, the means to implement the plan listed in Section 1123(a)(5)(A)–(J) are not exhaustive as indicated by the statute's language "such as."  11 U.S.C. § 1123(a)(5); *see In re Renegade*, 429 B.R. at 517.

While *In re Irving* does not control in this district, the Court finds the facts of *In re Irving* are distinguished from the present case.  In *In re Irving*, the panel considered six jointly administered bankruptcy cases in which the reorganization plan called for the turnover of self-insurance funds for the payment of the debtor's creditors.  *In re Irving Tanning Co.*, 496 B.R. at

647.  These funds were not the property of the debtors who held only "choses in action" property interests in the surplus funds and lacked a present right to dispose of them.  *Id.* at 659, 666. Additionally, the funds' turnover was in direct violation of state insurance law at the expense of potential workers' compensation claimants as third parties to the bankruptcy case.  *Id.* at 665.  *In re Irving* is dissimilar to this case and the circumstances leading the *In re Irving* court to emphasize the need for only those means which are minimally sufficient to implement the plan do not apply as strongly here.

This case is more similar to *In re Kaiser Gypsum, Co.* in which an insurer who contracted with the debtor to defend its asbestos claims was sent to state and federal court systems to defend its claims through the tort law process.  No. 20-00537, 2021 WL 3215102, 2021 U.S. Dist. LEXIS 146354 (W.D.N.C. July 28, 2021).  In *In re Kaiser*, the insurer objected that the reorganization plan violated assistance and cooperation clauses in its policies.  *Id.*  Finding the allegation that the insurer's rights were impaired by the confirmed plan did not provide the insurer with a right to collaterally attack the confirmation ruling, the court also noted that even if such rights existed, the Code preempted them.  *Id.* (citing *In re Federal-Mogul Glob. Inc.*, 684 F.3d 355, 382 (3d Cir. 2012)).

Here, the New Loan Agreement does not cause harm to any third parties.  Additionally, while the New Loan Agreement unquestionably alters the Appellants' contract rights, these altered rights do not themselves violate any state regulatory law of which the Court is aware. Although the Appellants are not restored to their pre-petition placement as was the insurer in *In re Kaiser*, they are also not completely devoid of their rights.  As noted in the Summary Judgment Order, "the original deed of trust and security agreement, the original note, the original assignment of leases, and the original guaranty agreements" are still in effect.  AP ECF 54, at 12.

Only the Original Loan Agreement and cash management provisions are in dispute. These changes do not rise to the level of excess that removes the Confirmation Order from Congress' express grant of preemption over nonbankruptcy law, and the Court was within its authority in the Confirmation Order to rule that the New Loan Agreement controls. The Appellants are unlikely to succeed on appeal on this argument.

> ii.     **This Court Will Not Overturn the Confirmation Order's "Fair and Equitable" Ruling.**

Next, the Appellants argue the Confirmation Order violated Section 1129(b)'s "fair and equitable" standard by rewriting Comm 2013's loan documents to shift an unequal amount of risk away from the Debtor to Comm 2013. AP ECF 100. The Appellants cite several cases illustrating the point that while "[t]he covenants to be included in the loan documents of a cramdown need not precisely track the covenants in the parties' existing loan agreement[,] . . . the covenants should not leave the lender so bare of protection as to greatly increase the risk or require a corresponding increase in the interest rate." *In re P.J. Keating Co.*, 168 B.R. 464, 473 (Bankr. D. Mass. 1994).

"Confirmation of a Chapter 11 plan of reorganization requires that the plan satisfy all of the confirmation criteria set forth in [Section] 1129(a)." *Behrmann v. Nat'l Heritage Found., Inc.*, 663 F.3d 704, 709 (4th Cir. 2011). The only exception to the requirement that all provisions of Section 1129(a) be satisfied is found in Section 1129(a)(8). If a debtor cannot satisfy Section 1129(a)(8), it may instead satisfy Section 1129(b) as a substitute. *See Maharaj v. Stubbs & Perdue, P.A. (In re Maharaj)*, 681 F.3d 558, 562 (4th Cir. 2012).

The Confirmation Order confirmed the Debtor's reorganization plan under Sections 1129(a)–(b). Additionally, while not expressed in the Confirmation Order, this Court knows the Confirmation Order included the New Loan Agreement as part of the Confirmed Plan because

the Confirmed Plan did not expressly provide for the retention of the Appellants' liens as required under Section 1129(b)(2)(A)(i)(I). The Court could only have confirmed the plan if it read the New Loan Agreement into the Confirmed Plan.  *See* AP ECF 54, at 12 n.9.  The Court, therefore, had the New Loan Agreement in front of it at the time of confirmation.

In the Confirmation Order, the Court implicitly ruled that the Debtor had satisfied Section 1129(b)'s "fair and equitable" standard by confirming the plan and noting it "[did] not believe that the Debtor . . . inappropriately modified the documents governing its relationship with Comm2013."  ECF 1313, at 9.  Furthermore, it held that

> while Comm2013 may be unhappy with the Debtor's proposed changes to the documents governing their relationship, the court does not perceive the changes to critically impair confirmation of the Debtor's plan.  The court's focus here is not upon the marketability of the underlying trust to investors or the economic risk to which they are exposed but is on the potential reorganization of a seemingly viable economic enterprise.

ECF 1313, at 10.  Again, the Court (Judge Flatley presiding) had the New Loan Agreement in front of it at the time of this ruling.  The contrast between the authority cited by the Appellants and the language of the Confirmation Order gave the Court pause in its Summary Judgment Order.  The Court even contemplated that, had it been given the opportunity to address the matter prior to confirmation, it may have preferred that the Debtor file a Third Amended Plan.  AP ECF 54, at 15 n.13.  The Court, however, will not second-guess Judge Flatley's ruling in the Confirmation Order and find for the first time that the terms of the New Loan Agreement violated the "fair and equitable" standard.  This is a mixed finding of law and fact, and the district court will therefore review under a *de novo* standard.  *In re J.A. Jones, Inc.*, 492 F.3d at 249.  The district court could find the Court was wrong to confirm the Debtor's plan and the terms of the New Loan Agreement, but the Court at this time does not find the Appellants have

made a strong showing of likely success on appeal such that it should be granted extraordinary relief.

The Court rules against the Appellants here not because the Appellants cannot succeed on appeal, but because they have not met their heavy burden for extraordinary relief. Furthermore, even if the Appellants could succeed on the merits, their appeal is likely equitably moot. The first factor for a stay pending appeal, therefore, is not satisfied by the Appellants' arguments on the merits of the Confirmation Order.

> **2.    The Appellants' Appeal is Likely Equitably Moot and Therefore They are Unlikely to Succeed on Appeal.**

In the district court's Order to Show Cause dated February 5, 2021, District Judge Keeley ordered Comm 2013 to show cause why its appeals should not be dismissed as untimely or equitably moot. Appeal ECF 20. Comm 2013 filed its Response to the Order to Show Cause asking the district court to find its appeals were not equitably moot and were filed timely. Appeal ECF 23. The Debtor filed its Response to the Order to Show Cause moving the district court to dismiss Comm 2013's Confirmation Order appeal as equitably moot; Comm 2013 filed a subsequent Reply. Appeal ECF 24, 25. The district court took the matter under advisement on March 4, 2021. Appeal ECF 28. The Appellants' Motion for Stay also expresses concern that their Confirmation Order appeal will be dismissed as equitably moot. AP ECF 100, at 4. The question of equitable mootness is thus an essential aspect of their success on appeal. If the district court rules the Confirmation Order appeal is equitably moot, the Appellants will be unsuccessful. This Court, therefore, will consider the likelihood the district court will dismiss the Appellants' Confirmation Order appeal as equitably moot.[7]

---

[7] The parties are reminded that this Court's prediction of likelihood of success on appeal has no bearing on whether the district court will find the Appellants' appeals equitably moot. This discussion bears only on whether this Court will grant a stay of the Confirmation Order pending appeal.

"Equitable mootness is a pragmatic doctrine 'grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable.'" *Bate Land Co. LP v. Bate Land & Timber LLC (In re Bate Land & Timber LLC)*, 877 F.3d 188, 195 (4th Cir. 2017) (citing *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002)). On appeal of a bankruptcy matter, a reviewing court "may dismiss an appeal as equitably moot 'when it becomes impractical and imprudent to upset the plan of reorganization at this late date.'" *Retired Pilots Ass'n of U.S. Airways, Inc. v. US Airways Grp., Inc. (In re US Airways Grp., Inc.)*, 369 F.3d 806, 809 (4th Cir. 2004) (citing *Mac Panel Co.*, 283 F.3d at 625). The factors considered in an equitable mootness determination are:

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*In re Bate Land & Timber LLC*, 877 F.3d at 195. When a dispute is primarily between two parties, "the third and fourth factors are particularly important to determining whether" an appeal is equitably moot. *Id.* at 196.

Under the first factor,[8] courts in this circuit have drawn a distinction between an appellant who seeks and is denied a stay and one who willfully chooses to allow a reorganization plan to be implemented without seeking a stay. *Patterson v. Mahwah Bergen Retail Grp. Inc.*, 636 B.R. 641 (E.D. Va. 2022); *see In re US Airways Grp., Inc.*, 369 F.3d at 809 (finding the fact

---

[8] The Court notes that Comm 2013, in its Response to the district court's Order to Show Cause, argues that the "[a]ppeals have been stayed," *see* Appeal ECF 23, para. 54. This is not the correct inquiry for equitable mootness. The correct question under the first factor is whether the court has stayed the implementation of the reorganization plan. *See Mac Panel Co.*, 283 F.3d at 625. In this case, the district court stayed the Confirmation Order appeal solely for the Court to rule on the Motion to Clarify; it did not stay the appeal because it believed Comm 2013 would be successful on the merits. Appeal ECF 8.

that the appellant never sought a stay weighed strongly in favor of finding equitable mootness). While merely seeking a stay is insufficient in and of itself, the denial of a stay does not necessarily mean the appeal will be equitably moot.  *See Patterson*, 636 B.R. 641; *see also Ochadleus v. City of Detroit (In re City of Detroit)*, 838 F.3d 792, 798–99 (6th Cir. 2016).  Here, while the Court denies the Appellants' Motion for Stay on both counts, the first factor will not weigh as heavily against the Appellants because they have not sat "idly by."  *Mac Panel Co.*, 283 F.3d at 625 (citing *Central States, Southeast & Southwest Areas Pension Fund v. Central Transp.*, 841 F.2d 92, 93 (4th Cir. 1988)).[9]

Next, the Bankruptcy Code defines "substantial consummation" to mean "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; . . . and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).  Making monthly payments to creditors under a confirmed plan qualifies as commencing distribution under Section 1101(2)(C).  *See Mitchell v. Keesee*, No. 13-00043-8, 2018 WL 1577710, 2018 Bankr. LEXIS 944 (Bankr. E.D.N.C. Mar. 29, 2018); *see also Hewlett-Packard Fin. Servs. Co. v. Alternative Graphics, Inc. (In re Alternative Graphics, Inc.)*, No. CC-14-1193, 2015 WL 6605542, 2015 Bankr. LEXIS 3696 (B.A.P. 9th Cir. Oct. 29, 2015); *In re Potts*, 188 B.R. 575, 581 (Bankr. N.D. Ind. 1995).  The Debtor has made continued monthly payments under the Confirmed Plan, *see* AP ECF 54, at 13, and a finding the Plan is substantially consummated is persuasive.  The second factor weighs in favor of finding the appeal equitably moot.

---

[9] While the Appellants did not file their Motion for Stay until March 3, 2022 and the Court entered the Confirmation Order on January 27, 2020, Comm 2013 filed its Motion to Clarify on February 10, 2020, within fourteen days of the Confirmation Order.  The Court issued the Clarification Order on September 24, 2020.  At that time, the Clarification Order conflicted with the Confirmation Order.  *See infra* Subsection III.A.  Under Comm 2013's interpretation of the Clarification Order, it saw no reason to appeal or seek a stay until the Court issued the Summary Judgment Order on January 6, 2022 which once and for all clarified the Confirmation Order.  The Appellants' Motion for Stay on March 3, 2022, therefore, was not unreasonably delayed and they have not sat on their hands for nearly two years without good cause.

Third, courts consider whether the relief requested would affect the plan's success. *In re Bate Land & Timber LLC*, 877 F.3d at 195. This factor also weighs in favor of equitable mootness. The parties seem to acknowledge that the Debtor has been operating under the New Loan Agreement ruled upon in the Confirmation Order and affirmed by the Summary Judgment Order. AP ECF 54, at 13. The terms of the New Loan Agreement differ from the terms of the Original Loan Agreement and if the Original Loan Agreement with its cash management provisions were reinstated the Debtor would unquestionably be in default. AP ECF 54. The Debtor's default would put the plan's success in serious jeopardy because, as this Court discussed in the Summary Judgment Order, it has concerns that Comm 2013 "at the first hint of default . . . would use that leverage to foreclose or otherwise move against the Debtor or the collateral security." AP ECF 54, at 15. There stands a high likelihood, therefore, that giving the Appellants relief by reinstituting the terms of the Original Loan Agreement and cash management provisions would threaten the Plan's success. The third factor favors equitable mootness.

Finally, the fourth factor examines whether granting the Appellants' relief would "adversely affect third parties . . . who have relied on the implementation of the reorganization plan to date." *Mac Panel Co.*, 283 F.3d at 626. In considering the fourth factor, courts also keep in mind the policy that "businesses, investors, and the public" rely on the "finality of bankruptcy confirmation orders." *In re US Airways Grp., Inc.*, 369 F.3d at 810–11. Here, the Debtor entered into a lease agreement with Charter Central, LLC for the lease of a Kentucky Fried Chicken restaurant on October 19, 2020. AP ECF 22-3. The Court confirmed the Debtor's Plan on January 27, 2020. ECF 1313. Charter Central, LLC likely relied on the finality of the Court's Confirmation Order in signing the lease with the Debtor and has continued that lease for

16

the past eighteen months in reliance on the Debtor's continued compliance with the New Loan Agreement such that Comm 2013 would not foreclose on the property unless the Debtor defaulted under the New Loan Agreement. *See In re US Airways Grp., Inc.*, 369 F.3d at 810 ("The third parties that engaged in these transactions . . . relied upon the confirmation and success of the reorganization plan, and thus did not account for the risks involved if we were to reinstate the massive pension liability on [the debtor].").  Granting the Appellants their requested relief and placing the Debtor in automatic default would adversely affect Charter Central, LLC. The Court finds the fourth factor also favors equitable mootness.

As the four factors in an equitable mootness consideration all point towards dismissal of the appeal, the Court finds it even less likely the Appellants will succeed on appeal.  This weighs against the Appellants on the first factor for a stay pending appeal.

### 3.      Timeliness of Appeals

The timeliness of the Confirmation Order appeal is the subject of pending dispute in the district court.  It neither weighs in favor nor against a stay.  The Adversary Proceeding appeal is timely, which weighs in favor of the Appellants, but only nominally.

The Appellants fail under the first prong.

### B.      The Appellants Fail to Demonstrate Irreparable Harm Absent a Stay because any Harm from Complying with the New Loan Agreement Does Not Exceed the Harm to the Debtor if the Stay is Granted.

The second factor in a stay analysis concerns whether the movant will suffer irreparable harm absent a stay.  *Nken*, 556 U.S. at 434.  Generally, mere money damages are insufficient to demonstrate irreparable harm.  *In re Wellington*, 631 B.R. at 843–44 (citing *Allen v. Fitzgerald*, 590 B.R. 352, 360 (W.D. Va. 2018)).  In bankruptcy appeals, however, irreparable harm can arise when money damages "may be unobtainable from the [debtor] because he may become

insolvent before a final judgment can be entered and collected." *Allen*, 590 B.R. at 361 (internal citation omitted). Considering the irreparable harm factor for a preliminary injunction, the Fourth Circuit noted that "[t]hese situations are quite narrow, reflecting instances where the harm suffered by the [movant] from denying the injunction is especially high in comparison to the harm suffered by the defendant from granting it." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).

Separate from whether money damages may be collected, the Appellants argue that irreparable harm can arise when damages are incalculable. Courts in this circuit have held that irreparable harm may be found when a movant's damages absent a stay cannot be calculated. *See Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994); *see also Merrill Lynch v. Coffindaffer*, 183 F. Supp. 2d 842, 850 (N.D. W. Va. 2000). Courts have only found irreparable harm on incalculable damages, however, in limited situations such as a loss of goodwill, the permanent loss of customers, or permanently reduced income. *See Merrill Lynch*, 183 F. Supp. 2d at 850.

Here, the Appellants fail to show they will suffer irreparable harm absent a stay. While the Debtor is in bankruptcy, and therefore there is a higher risk of uncollectable damages, the Appellants have presented no evidence that the Debtor has failed to pay its loan obligations with the possible exception of post-confirmation fiscal year 2020 real estate taxes. *See* AP ECF 54, at 13. While there is real harm for non-payment of real estate taxes, this harm is minimal compared to the harm that would be sustained by the Debtor were the Court to stay the Confirmation Order because the Debtor would be in default of the Original Loan Agreement. The *Hughes* exception therefore does not apply.

Next, while the Court agrees the Debtor's failure to comply with the terms of the Original Loan Agreement would cause incalculable harm to the Appellants, this harm is neither great nor a loss of customers, profits, or goodwill.  The Appellants argue that without the protections of the Original Loan Agreement the Debtor may erode Comm 2013's lien, make material alterations to the property, or change its line of business.  AP ECF 100.  This may be true, but the record does not reflect any incentive for the Debtor to do so.  To the contrary, it appears that most actions taken by the Debtor have been to the Appellants' benefit by increasing the value of the property and attempting to create more positive cash flow to pay the Debtor's obligations.[10] Furthermore, it stands to reason that even incalculable harm does not equate to irreparable harm if the harm is relatively minor.  The Appellants fail under the second prong.

### C.     Granting the Appellants a Stay of the Confirmation Order Would Cause Substantial Harm to the Debtor.

Once a court considers the two most critical factors in determining a motion for stay pending appeal, it then shifts to the two remaining factors: harm to other parties and the public interest.  *In re Wellington*, 631 B.R. at 845.  Under the third prong, the movant must show the balance of harm tends toward granting the stay.  *Id.* (citing *In re Stewart*, 604 B.R. 900, 908 (Bankr. W.D. Okla. 2019)).  "Unlike the second factor, the harm to non-movants need only be substantial, not irreparable, and a non-movant's ability to financially recover from a harm does not necessarily make that harm insubstantial."  *Id.* (citing *Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-CV-00484, 2020 WL 7680552, 2020 U.S. Dist. LEXIS 247976 (E.D. Va. Sept. 4, 2020)).

---

[10] The Appellants reference the Lien Release as evidence of the Debtor's willingness to act to the Appellants' detriment.  The Court has, for good reason, repeatedly admonished the Debtor for this conduct but does not find this conduct will be repeated.

The Court finds the third factor weighs against granting a stay.  If the Court grants the Appellants' Motion for Stay on the Confirmation Order, the Debtor will be forced to comply with the Original Loan Agreement, upon which the Debtor would be in immediate default.  AP ECF 54, at 13.[11]  Furthermore, the reinstitution of the Original Loan Agreement and cash management provisions would leave the Debtor to comply with burdensome financial reporting requirements, cash management provisions, and reserve requirements.  Finally, this Court has previously noted that it has concerns the Appellants would move against the Debtor at the first hint of default.  AP ECF 54, at 15.  Due to the contentious, protracted litigation in this case, these concerns remain.  While the Court finds there may be, albeit minor, adverse effects to the Appellants if the Motion for Stay is denied, it is certain that granting the stay would cause substantial harm to the Debtor.  The balance of harms tends towards denying the stay in this case.

**D.      The Appellants Fail to Meet their Burden to Show the Public Interest Favors a Stay.**

The final factor in considering a stay pending appeal is whether the stay serves the public interest.  *In re Wellington*, 631 B.R. at 845 (citing *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970)).  "A stay will impact the public interest if it has 'consequences beyond the immediate parties.'"  *Id.* (citing *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015)).  This factor recognizes "the desirability of implementing the legitimate expectations of creditors . . . to get

---

[11] While the Appellants attached as an exhibit to their Motion for Stay a proposed order that would prohibit Comm 2013 from enforcing defaults existing solely under the Original Loan Agreement and cash management provisions, thereby attempting to relieve the automatic default of the Debtor if it must comply with the Original Loan Agreement, the Court is not inclined to enter the proposed order.  This may be an offer of good faith on the part of the Appellants, but given the overt hostility between the parties that has shown no sign of abating, it comes with little gravitas at this late stage.

paid." *Ga. United Credit Union v. Moore (In re Moore)*, No. 20-40309, 2020 WL 5633081, 2020 Bankr. LEXIS 2307 (Bankr. S.D. Ga. Aug. 27, 2020).

The Appellants fail to meet their burden on this factor.  There are no readily identifiable consequences to the general public if the Confirmation Order is not stayed pending appeal and the Appellants must comply with the terms of the New Loan Agreement.  Although courts recognize the public interest in creditors' expectations to be paid, the Appellants will be paid under the New Loan Agreement.  As discussed in the Court's Summary Judgment Order, the original note is not at issue, only the Original Loan Agreement and cash management provisions. *See* AP ECF 54.  The Appellants even concede that the amount of the Debtor's loan payments will not change if the stay is granted.  AP ECF 100, at 20, para. 58.  As the Debtor will be obligated to pay the Appellants under both the Original and New Loan Agreements, there is no public interest compelling the Court to grant a stay.

Furthermore, the Appellants argue they will have no meaningful appellate review of the Confirmation Order or the Summary Judgment Order unless the Court grants a stay.  Even if this argument were applicable to the public interest prong, the denial of a stay pending appeal is not a death-knell for the Appellants' argument against equitable mootness.  *See Patterson*, 636 B.R. 641.  Finally, the Appellants cite *CWCapital Asset Mgmt., LLC v. Burcam Cap. II, LLC* for the proposition that "the public interest in correcting legal errors in the bankruptcy court outweighs the interest in the efficient administration of the estate."  No. 5:13-CV-278-F, 2013 WL 3288092, 2013 U.S. Dist. LEXIS 91488 (E.D.N.C. June 28, 2013).  This Court, however, finds no legal errors to be corrected.  The Appellants, therefore, fail to meet their burden on the fourth prong.  As the Appellants have the burden of proving the public interest favors a stay, they necessarily fail because the public interest does not favor either granting or denying the stay.

The Appellants have failed under all four factors to demonstrate they should be granted a stay pending appeal.  The Court will deny the Motion for Stay on the Confirmation Order.

III.    <u>The Summary Judgment Order Should Not be Stayed Pending Appeal.</u>

Next, as the Court has denied the Appellants' Motion for Stay on the Confirmation Order, the Court now proceeds to the Appellants' Motion for Stay on the Court's Rule 60(a) decision.  In their Motion for Stay, the Appellants argue that the Court improperly used Rule 60(a) to reconsider substantive matters rather than make "mechanical" adjustments to resolve clerical errors.[12]  AP ECF 100.  The Appellants argue that the Court changed its mind with respect to the Clarification Order and that this was a reconsideration outside of Rule 60(a)'s scope.  In opposition, the Debtor argues that the Summary Judgment Order merely further clarified the Clarification Order and affirmed the Court's decision in the Confirmation Order.  AP ECF 107.  Additionally, the Debtor argues the "turnover on [the] Court's bench" necessitated the use of Rule 60(a) to clarify the Court's prior decision.  AP ECF 107.  For the reasons stated below, the Court denies the Appellants' Motion for Stay on the Rule 60(a) decision.

For the second through fourth factors, as granting a stay of either the Confirmation Order or the Rule 60(a) decision would likely bring about the same result, *see supra* Section III, n.12, the Court's analysis is identical on both motions.  The Court will therefore forego repeating its discussion in the motion to stay the Rule 60(a) decision and rule on these factors as it did in the motion to stay the Confirmation Order.

---

[12] For the sake of discussion, the Court will treat the Appellants' Motion for Stay on the Court's Rule 60(a) decision such that the granting of a stay would reinstate the terms of the Original Loan Agreement.  As the Court's Summary Judgment Order was used to clarify an inconsistency between the Confirmation Order and the Clarification Order as to whether the Original Loan Agreement or the New Loan Agreement applied, it is unclear whether a stay on the Rule 60(a) decision would actually reinstate the Original Loan Agreement terms.

**A.      The Appellants Have Not Demonstrated They Will Succeed on Appeal.**

As described in greater detail above, under the first factor for a party seeking a stay pending appeal, a movant must make a "strong showing" of likely success on appeal. *Nken*, 556 U.S. at 434. The arguments made by the moving party should not be restated arguments from prior filings but should instead show something different than what was previously argued. *In re Wellington*, 631 B.R. at 839 (citing *Palomo*, 2019 WL 9633647, 2019 U.S. Dist. LEXIS 232712; *New York Life Ins. Co.*, 2017 WL 10187669, 2017 U.S. Dist. LEXIS 230194).

Federal Rule of Civil Procedure 60 applies in bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 9024. FED. R. BANKR. P. 9024. Under Rule 60(a), "[t]he court may correct a clerical mistake *or a mistake arising from oversight or omission* whenever one is found in a judgment, order, or other part of the record." FED. R. CIV. P. 60(a) (emphasis added). A court cannot utilize Rule 60(a) to reconsider a previously-decided issue. *Sartin v. McNair Law Firm PA*, 756 F.3d 259, 265 (4th Cir. 2014).

> The basic distinction between clerical mistakes and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of blunders in execution whereas the latter consist of instances where the court *changes its mind*, either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination.

*Id.* (citing *Rhodes v. Hartford Fire Ins. Co.*, 548 Fed. App'x 857, 859–60 (4th Cir. 2013)) (emphasis in original). The Fourth Circuit has stressed that Rule 60(a) may be used to fix more than just "typographical and other clerical errors" because the rule's text also permits a court to correct mistakes from oversight or omission. *See id.* (citing FED. R. CIV. P. 60(a)). "Such a mistake occurs when there is an inconsistency between the text of an order or judgment and the [trial court's] intent when it entered the order or judgment[. This mistake can include] an

unintended ambiguity that obfuscates the court's original intent." *Id.* at 265–66.  In the Fourth

Circuit, therefore, Rule 60(a) gives courts authority to correct mistakes to the text of an order to

match the court's original intent.  *See id.*

The analysis now turns to how a court determines its intent at the time of the original

order corrected by Rule 60(a).  The court's original intent may be discerned from

contemporaneous documents including a memorandum opinion or transcript as well as the

"presiding judge's own subsequent statements." *Id.* (citing *Rhodes*, 548 Fed. App'x at 860).

An appellate court's review on a Rule 60(a) decision is reviewed for abuse of discretion.

*Id.* at 265 (citing *Caterpillar Fin. Servs. Corp. v. F/V Site Clearance I*, 275 F. App'x 199, 204

(4th Cir. 2008)).

Here, the Appellants have failed to give a strong showing they are likely to succeed on

appeal.  While the Appellants correctly cite *Rhodes* as good authority for interpreting Rule 60(a),

their view of the rule is too narrow.  *See* AP ECF 100.  This Court's use of Rule 60(a) is not

limited to mere clerical errors of incorrect docketing or transposed numbers, it may use the rule

to clarify mistakes arising from its own oversights.  The Court's Summary Judgment Order,

despite the Appellants' assertion that it made substantive amendments to the Clarification Order,

merely clarified ambiguities between the Clarification Order and the Confirmation Order.  This

Court has expressed regret with the language used in its Clarification Order with regard to the

loan terms under the Confirmed Plan as it caused significant confusion among the parties, likely

heightened by the parties' general ill will.  *See* AP ECF 54.  In pertinent part, the Confirmation

Order, with the New Loan Agreement and its terms attached, stated it "[did] not find anything

impermissible about the Debtor's proposed modifications of its relationship with Comm2013."

ECF 1313, at 10.  Next, in oft-cited language, the Clarification Order stated "[a]lthough perhaps

implicit in the Debtor's plan, the Court neither perceived wholesale changes to the loan

agreement or note, other than terms necessary to implement the confirmed plan . . . .  To the

contrary, it appears the Court believed that the Debtor's modification of its relationship with

Comm2013 would be incorporated into existing security instruments."  ECF 1411, at 5.  These

Orders are plainly inconsistent.  Thus, the Court may use Rule 60(a) to correct an ambiguity to

match its original intent.

The Court now looks to its intent at the time it issued the Confirmation Order.  Looking

to the language of the Confirmation Order, the Court's (Judge Flatley's) original intent was

clearly to institute the terms of the New Loan Agreement attached to the Confirmed Plan.  ECF

1313.  The Court discussed at length its belief in the viability of the Debtor's business and that

the Appellants' concerns regarding the securitization of the loan were irrelevant to plan

confirmation.  ECF 1313, at 10 ("Simply put, while Comm2013 may be unhappy with the

Debtor's proposed changes to the documents governing their relationship, the court does not

perceive the changes to critically impair confirmation of the Debtor's plan.").  Additionally, the

Court had the New Loan Agreement in front of it at the time of confirmation and clearly knew of

its terms.  While the Court would typically next look to subsequent statements of the presiding

judge, none exist here.  Judge Flatley entered the Confirmation Order on January 27, 2020, and

he retired on March 11, 2020.  In the interim period, Judge Flatley held two hearings concerning

the Confirmation Order: the first on February 7, 2020 and the second on March 10, 2020.  Judge

Flatley made no mention at either hearing whether he intended the Confirmation Order to

maintain the Original Loan Agreement or replace it with the New Loan Agreement.  The Court,

therefore, has only the contemporaneous language of the Confirmation Order as evidence of

Judge Flatley's original intent. The contemporaneous language of the Confirmation Order indicates the Court's original intent was to enforce the terms of the New Loan Agreement.

The Appellants attempt to pick and choose between the Confirmation Order and the Clarification Order the interpretation that best suits their interests. As these Orders created muddied waters, it was the Court's province under Rule 60(a) to identify its intent and issue the clarifying Summary Judgment Order. The Court's intent was to honor the Confirmation Order and the Court therefore used its Summary Judgment Order to clear away this confusion and put all parties on the same page. The Court's Summary Judgment Order did not effect substantive changes as it only clarified that the Confirmation Order language enforces the terms of the New Loan Agreement. Accordingly, the Appellants have not shown they are likely to succeed on appeal, and the Appellants fail on the first prong.

**B.      The Appellants Have Not Shown They Will Suffer Irreparable Injury if the Stay is Denied.**

For the reasons stated above in Subsection II.B, the Court finds the Appellants fail on the second factor.

**C.      The Appellants Fail to Show the Debtor Will Not Suffer Substantial Harm if the Court Grants the Motion for Stay.**

For the reasons stated above in Subsection II.C, the Court finds the Appellants fail on the third factor.

**D.      The Appellants Fail to Show Staying the Court's Rule 60(a) Decision Will Serve the Public Interest.**

For the reasons stated above in Subsection II.D, the Court finds the Appellants fail on the fourth factor.

The Appellants have failed on all four factors in their attempt to stay the Court's Rule 60(a) decision and the Court will therefore deny the Motion for Stay.

**Conclusion**

For all of the above stated reasons, the Appellants' Motion for Stay is denied in whole.  A separate Order will follow.